
FEB 14 2008
U.S.D.C. S.D. N.Y.
CASHIERS

Jared M. Lefkowitz (JL 6920)
48 Wall Street, 11th Floor
New York, NY 10005
T (917) 887-3920
F (917) 591-8991
JaredLefkowitz@yahoo.com
*Attorney for Plaintiff Alberto Lafontaine*

JUDGE STEIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALBERTO LAFONTAINE,

Plaintiff,

- against -

THE CITY OF NEW YORK,
THE NEW YORK CITY POLICE DEPARTMENT,
POLICE OFFICER VIRGILIO BENCOSME, and
JOHN DOES #1 - 10,

Defendants.

--------------------------------------------------------------X

Case No. 08 CV 1555

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Alberto Lafontaine, by and through his counsel Jared M. Lefkowitz, as and for his Complaint against the above named defendants alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action under 42 U.S.C. §1983 and 42 U.S.C §1988 for violations of plaintiff's civil rights, the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, and New York State claims for false

arrest, false imprisonment, malicious prosecution, negligent hiring, training, supervision, and retention, and infliction of emotional distress.

2. As described below, Plaintiff is a decorated soldier in the United States Army who was wounded in action in Iraq. Following physical therapy for his injury, plaintiff was honorably discharged from the Army in 2006 whereupon he obtained a job with the United States Department of Justice as a federal corrections officer.

3. While off duty on January 27, 2007 in Bronx, New York, plaintiff was unlawfully detained and arrested for possession of a concealed weapon, a .9 mm pistol, and possession of ammunition.

4. Plaintiff was not charged with any other crimes.

5. A federal corrections officer is a "qualified law enforcement officer" and as such is authorized and entitled to carry a concealed weapon, to wit, the .9mm handgun in the possession of plaintiff, along with ammunition.

6. Prior to and at the time of his arrest plaintiff presented his identification as a federal corrections officer.

7. There was no probable cause to arrest plaintiff because the officers did not have knowledge or reasonably trustworthy information of facts and circumstances sufficient to believe that plaintiff had committed a crime.

8. Upon information and belief, plaintiff's credentials were thereafter verified by the arresting officer's supervisor while plaintiff was still at the local police precinct.

9. The charges were eventually dismissed, but not for approximately nine months, until October 16, 2007, during which time plaintiff had to endure the stigma and emotional distress of being indicted and prosecuted for a serious felony.

10. No fewer than three Assistant District Attorneys from Bronx County worked on the case, all agents or representatives of the defendant City of New York, any one of whom or their supervisors should have immediately dismissed the charges.

11. There is no way plaintiff could have been indicted unless defendants willfully, intentionally, and with the utmost of bad faith, withheld from the Grand Jury that: (a) plaintiff was a corrections officer at the time of his arrest, and (b) that corrections officers are authorized to carry such weapons and ammunition, even when off duty.

**PARTIES, JURISDICTION, AND VENUE**

12. Plaintiff Alberto Lafontaine is an individual residing in the Bronx, New York, within the Southern District of New York. Although plaintiff had previously been honorably discharged from the Army in 2006, plaintiff has since been

recalled and is currently on active duty.

13. Defendant The City of New York is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

14. Defendant The City of New York maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, City of New York.

15. Defendant Police Officer Virgilio Bencosme is a duly sworn police officer of the New York City Police Department, in the 47th Precinct, Shield No. 9628, acting under the supervision of said department and at all relevant times acted according to his official duties.

16. Defendant John Does #1 - 10 are other Police Officers in the New York City Police Department and/or PO Bencosme's supervisors, all of them acting under the supervision of said department, in the scope of their employment, according to their official duties, and in furtherance of the interests of the NYPD.

17. Defendants, either personally or through their employees, were acting under color of State law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the City of New York,

and were the agents, representatives, principals and/or employees of each other.

18. This Court has jurisdiction pursuant to 42 U.S.C. §1983 and 1988, and supplemental jurisdiction pursuant to 28 U.S.C. §1367.

19. Venue is proper in this District in that the plaintiff resides in this District and the acts complained of occurred in this District.

20. A Notice of Claim was duly filed with the City of New York on November 5, 2007.

21. More than thirty (30) days have elapsed since the service of the Notice of Claim upon the City of New York.

22. The City of New York and its Comptroller have failed, neglected, and refused to pay, settle, compromise, or adjust the claims of plaintiff.

23. This action has been commenced within one (1) year and ninety (90) days after the causes of action of plaintiff accrued.

24. It is noted with respect to several but not all of the claims that the notice of claim was arguably not timely filed within 90 days after the cause of action accrued. A petition for leave to file a late notice of claim as to the arguably late claims was filed with the Supreme Court, Bronx County, and was submitted to the court for decision *without opposition* on January 31, 2008. The petition remains *sub judice* as of the date of this complaint.

## FACTS APPLICABLE TO ALL COUNTS

25. Plaintiff was a soldier in the United States Army from 1997 through 2006. Plaintiff had been seriously wounded in action in Iraq in 2005, and was honorably discharged in 2006 after undergoing extensive rehabilitation for his injuries.

26. Following such honorable discharge from the Army, plaintiff obtained a job with the United States Department of Justice as a federal corrections officer in New York City at the Metropolitan Detention Center.

27. While off duty on January 27, 2007, plaintiff was detained and arrested for possession of a concealed weapon, to wit, a .9 mm pistol, and possession of ammunition.

28. Prior to and at the time of his arrest, plaintiff notified the arresting officer, defendant Police Officer Bencosme, and PO Bencosme's supervising officer, that plaintiff was a federal corrections officer.

29. Prior to and at the time of his arrest, plaintiff produced to these officers true and valid identification and a shield documenting that plaintiff was a federal corrections officer.

30. That notwithstanding, the defendant Police Officers arrested plaintiff on these charges.

31. The supervising officer stated to plaintiff shortly after plaintiff's arrest, while plaintiff was still being detained at the local police precinct, that the supervisor had called plaintiff's job and verified plaintiff's credentials as a federal corrections officer.

32. Such supervisor therefore had actual notice of the unconstitutional and unlawful arrest of plaintiff, and demonstrated gross negligence or deliberate indifference by failing to act.

33. After more than one full day in custody, plaintiff was brought before the court for arraignment.

34. At the arraignment the Assistant District Attorney was notified that plaintiff was a federal corrections officer, and that his credentials had been verified. Yet, the ADA proceeded to arraign plaintiff on the charges.

35. Plaintiff pleaded not guilty, and inasmuch as plaintiff had never before had any arrests or any contact with the criminal justice system, plaintiff was released on his own recognizance.

36. His "ROR" notwithstanding, plaintiff was forced to endure being incarcerated, treated as a criminal, and was compelled to explain to his wife and 7 year old son what had happened.

37. During the time plaintiff was incarcerated he was in constant fear

for his physical safety. Plaintiff feared for his very life in the event that the other inmates learned that plaintiff was a corrections officer.

38. From the time of plaintiff's arrest and throughout his incarceration until his arraignment plaintiff was not free to leave, despite the fact that there was no probable cause to believe that plaintiff had committed a crime or arrest warrant on which to base plaintiff's detention.

39. At all times during plaintiff's incarceration plaintiff was aware and conscious of his confinement, such incarceration was intentional by defendants, plaintiff did not consent to such incarceration, and the incarceration was not otherwise privileged by law.

40. Plaintiff was thereafter indicted on these charges, and appeared in court approximately five times over the next approximately nine months.

41. Each and every one of these court appearances was an opportunity for the charges against plaintiff to be dismissed.

42. During these nine months, there were no less than three ADA's assigned to prosecute the case against plaintiff, and each one of them was provided with copies of plaintiff's credentials as a federal corrections officer, and verbally advised of this improper and unlawful prosecution.

43. Upon information and belief, each of these assigned ADA's spoke

with their supervisors about the case, and such supervisors were alerted to the unconstitutional prosecution against plaintiff.

44. The Assistant District Attorneys and their supervisors, all agents of the City of New York, demonstrated gross negligence or deliberate indifference by failing to act.

45. During the criminal prosecution of plaintiff, counsel for plaintiff was advised that there was a policy, practice, procedure, and/or governmental custom in place regarding the prosecution of gun related crimes, which are considered extraordinarily serious and which is why plaintiff was arrested, charged, indicted, and prosecuted.

46. Further, on at least two occasions in conversations with two different assigned Bronx County ADA's, plaintiff's counsel was advised that another basis for the prosecution was that the concealed weapon was not plaintiff's service weapon.

47. This Court should take judicial notice that the law does not distinguish, limit, or restrict a "qualified law enforcement officer" to carry only his service weapon as opposed to an off duty weapon. See 18 U.S.C. §926B.

48. At an appearance before the court on September 25, 2007, New York State Justice Mogulescu expressed outrage and frustration as to how the case

could ever have been brought in the first place, and how it could have gotten this far.

49. Justice Mogulescu adjourned the case, directing the Bronx County District Attorney's Office to investigate and on the next court date to explain the basis for the prosecution.

50. On that adjourn date, October 16, 2007, the Assistant District Attorney provided no basis for the prosecution, and requested that the charges be dismissed. Justice Mogulescu immediately dismissed the charges.

**COUNT I**

51. As described above, plaintiff was deprived of rights secured by the Constitution or laws of the United States, and such deprivation was committed under color of State law, in violation of 42 U.S.C. §1983 and 42 U.S.C §1988.

52. Plaintiff has suffered damages from such violations in an amount to be determined at trial but no less than $1,000,000, along with punitive damages, attorney's fees, and any other available damages.

**COUNT II**

53. As described above, plaintiff was falsely arrested and thereby deprived of rights secured by the Constitution or laws of the United States, and such deprivation was committed under color of State law, in violation of 42 U.S.C. §1983 and 42 U.S.C §1988.

54. Plaintiff has suffered damages from such violations in an amount to be determined at trial but no less than $1,000,000, along with punitive damages, attorney's fees, and any other available damages.

**COUNT III**

55. As described above, plaintiff was falsely imprisoned and thereby deprived of rights secured by the Constitution or laws of the United States, and such deprivation was committed under color of State law, in violation of 42 U.S.C. §1983 and 42 U.S.C §1988.

56. Plaintiff has suffered damages from such violations in an amount to be determined at trial but no less than $1,000,000, along with punitive damages, attorney's fees, and any other available damages.

**COUNT IV**

57. As described above, plaintiff was maliciously prosecuted and thereby deprived of rights secured by the Constitution or laws of the United States, and such deprivation was committed under color of State law, in violation of 42 U.S.C. §1983 and 42 U.S.C §1988.

58. Plaintiff has suffered damages from such violations in an amount to be determined at trial but no less than $1,000,000, along with punitive damages, attorney's fees, and any other available damages.

**COUNT V**

59. As described above, plaintiff was subjected to emotional distress and thereby deprived of rights secured by the Constitution or laws of the United States, and such deprivation was committed under color of State law, in violation of 42 U.S.C. §1983 and 42 U.S.C §1988.

60. Plaintiff has suffered damages from such violations in an amount to be determined at trial but no less than $1,000,000, along with punitive damages, attorney's fees, and any other available damages.

**COUNT VI**

61. As described above, defendants actions constitute negligent hiring, training, supervision, and retention of its agents, representatives, and/or employees, and deprived plaintiff of rights secured by the Constitution or laws of the United States, and such deprivation was committed under color of State law, in violation of 42 U.S.C. §1983 and 42 U.S.C §1988.

62. Plaintiff has suffered damages from such negligent hiring, training, supervision, and retention in an amount to be determined at trial but no less than $1,000,000, along with punitive damages.

**COUNT VII - FALSE ARREST UNDER NEW YORK STATE LAW**

63. As described above, defendants actions constitute false arrest.

64. Plaintiff has suffered damages from such false arrest in an amount to be determined at trial but no less than $1,000,000, along with punitive damages.

**COUNT VIII - FALSE IMPRISONMENT UNDER NEW YORK STATE LAW**

65. As described above, defendants actions constitute false imprisonment.

66. Plaintiff has suffered damages from such false imprisonment in an amount to be determined at trial but no less than $1,000,000, along with punitive damages.

**COUNT IX - MALICIOUS PROSECUTION UNDER NEW YORK STATE LAW**

67. As described above, defendants actions constitute malicious prosecution.

68. Plaintiff has suffered damages from such malicious prosecution in an amount to be determined at trial but no less than $1,000,000, along with punitive damages.

## COUNT X - NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION UNDER NEW YORK STATE LAW

69. As described above, defendants actions constitute negligent hiring, training, supervision, and retention.

70. Plaintiff has suffered damages from such negligent hiring, training, supervision, and retention in an amount to be determined at trial but no less than $1,000,000, along with punitive damages.

## COUNT XI - INFLICTION OF EMOTIONAL DISTRESS UNDER NEW YORK STATE LAW

71. As described above, defendants actions constitute infliction of emotional distress.

72. Plaintiff has suffered damages from such infliction of emotional distress in an amount to be determined at trial but no less than $1,000,000, along with punitive damages.

**WHEREFORE**, plaintiff demands judgment as follows:

A. On the first count, damages in an amount to be determined at trial but no less than $1,000,000, along with punitive damages, attorneys fees, and any other available damages;

B. On the second count, damages in an amount to be determined at trial but no less than $1,000,000, along with punitive damages, attorneys fees, and any other available damages;

C. On the third count, damages in an amount to be determined at trial but no less than $1,000,000, along with punitive damages, attorneys fees, and any other available damages;

D. On the fourth count, damages in an amount to be determined at trial but no less than $1,000,000, along with punitive damages, attorneys fees, and any other available damages;

E. On the fifth count, damages in an amount to be determined at trial but no less than $1,000,000, along with punitive damages, attorneys fees, and any other available damages;

F. On the sixth count, damages in an amount to be determined at trial but no less than $1,000,000, along with punitive damages, attorneys fees, and any other available damages;

G. On the seventh count, damages in an amount to be determined at trial but no less than $1,000,000, along with punitive damages;

H. On the eighth count, damages in an amount to be determined at trial but no less than $1,000,000, along with punitive damages;

I. On the ninth count, damages in an amount to be determined at trial but no less than $1,000,000, along with punitive damages;

J. On the tenth count, damages in an amount to be determined at trial but no less than $1,000,000, along with punitive damages;

K. On the eleventh count, damages in an amount to be determined at trial but no less than $1,000,000, along with punitive damages; and

L. Costs, and such other and further relief as the court deems just and proper.

Dated: New York, NY
February 14, 2008

LAW OFFICES OF
JARED M. LEFKOWITZ

By ______________________
Jared M. Lefkowitz (JL 6920)
48 Wall Street, 11th Floor
New York, NY 10005
T (917) 887-3920
F (917) 591-8991
JaredLefkowitz@yahoo.com
*Attorney for Plaintiff Alberto Lafontaine*